**Walter Gardner and Jane Gardner v. West-Col, Inc. and John L. Whalen, Trustee**

[392 A.2d 383]

No. 75-77

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed September 11, 1978

*Allan R. Keyes* and *John Zawistoski* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Plaintiffs.

*Valsangiacomo, Heilmann & Detora,* Barre, for West-Col, Inc.

**Billings, J.** This is an appeal by the defendant West-Col, Inc. (hereinafter West-Col) and by the trustee from a judgment awarding plaintiffs recovery of a $10,000 deposit, including any interest accumulated thereon, made pursuant to an agreement for the sale of real property, plus $3,484.78 incurred by plaintiffs in pre-purchase expenses, and dismissing West-Col's counterclaim. Plaintiffs alleged that West-Col breached the contract; West-Col counterclaimed for "slander of title." Trial was by the court, which made findings of fact revealing the following.

On April 14, 1973, West-Col and plaintiffs' assignor entered into a purchase and sales agreement with respect to the Colonial Inn in Arlington with a $10,000 deposit given to the trustee. In the agreement, West-Col warranted that all permits and licenses necessary to operate the Colonial Inn as a restaurant and inn were in full force and effect; the purchaser was not obligated to close if such permits and licenses were not in effect at closing. A closing was scheduled for May 19, 1973. On May 19, however, valid food and beverage licenses did not exist. Also, it appeared to plaintiffs' counsel that lack of compliance with fire regulations would prevent the acquisition of those licenses. Thus, the transaction was not consummated.

On May 19, at the closing, plaintiffs offered to close at a later date if deficiencies reported by the Fire Marshal were corrected. On May 22, West-Col's president wrote plaintiffs that any deficiencies reported by the Fire Marshal would be corrected. A June 9 closing was scheduled, and West-Col's counsel advised plaintiffs' counsel sometime between June 2 and June 9 that the fire deficiencies would be remedied. At the June 9 closing, however, West-Col's president indicated

surprise at the Fire Marshal's report and stated that West-Col would not remedy the deficiencies. The proceedings terminated, and this suit, commenced June 1, was prosecuted.

From these facts, the trial court concluded that West-Col was unable to comply with the terms and conditions of the sales agreement on May 19, because the requisite licenses were not in effect. The trial court further concluded that plaintiffs' May 19 offer "to close at a later date, conditioned upon [West-Col] correcting the fire regulation deficiencies, and the agreement to comply by [West-Col's president's] letter of the same date, constituted a novation, the consideration being that no escrow would be required and that plaintiffs would close regardless of the lack of licenses." Thus, the court held that West-Col's president's stated refusal on June 9 to correct the deficiencies was a breach of the agreement entitling plaintiffs to recover.

On appeal, appellants claim error in the court's conclusion of a novation of the sales contract in that no letter dated May 19, 1973, can be found in the record. Also, appellants contend that any acceptance of plaintiffs' May 19 offer was made conditional on a May 23 closing, which did not occur. Secondly, appellants challenge the admission into evidence of the Fire Marshal's report. Thirdly, appellants allege error generally in the trial court's failure to find that plaintiffs breached the agreement first. Lastly, appellants claim the trial court erroneously dismissed their counterclaim.

■ Appellants' first attack is on the trial court's conclusion that a novation of the sales agreement occurred. They state that the conclusion, quoted above, must fall because there is no May 19 letter from West-Col agreeing to correct the fire regulation deficiencies. This argument lacks any merit whatsoever. In its conclusion, the trial court is obviously referring to the May 22 letter written by West-Col's president in which he commits West-Col to satisfy any deficiencies in the Fire Marshal's report. This type of mistake does not rise to the level of reversible error. See *Cass-Warner Corp.* v. *Brickman*, 126 Vt. 329, 333, 229 A.2d 309, 312 (1967).

■ Appellants next attack the court's conclusion of a novation on the ground that any acceptance expressed by

the May 22 letter was conditioned on a May 23 closing, which did not occur. The May 22 letter states that:

> [West-Col is] willing to close tomorrow [May 23] . . . the Fire Inspector ha[s] made his inspection Tuesday morning [May 22] and . . . [West-Col is] willing to correct any and all deficiencies which he sets forth in his report which he will be sending me in due course and that if [plaintiffs do] not close on Wednesday, May 23, it will be [their] last opportunity.
> . . . [West-Col is] now willing to commit to satisfy at the expense of West-Col, Inc. any deficiencies set forth in the Fire Marshal's report.

The letter does not clearly condition agreement to correct the deficiencies on a May 23 closing. Also, the plaintiffs introduced evidence that West-Col, through counsel, continued to advise plaintiffs' counsel after May 23 that the deficiencies would be corrected.

■ Where the meaning of a writing is uncertain and extrinsic evidence is introduced in aid of its interpretation, the question of its meaning is one of fact to be decided by the fact finder. *William Feinstein Brothers, Inc.* v. *L. Z. Hotte Granite Co.*, 123 Vt. 167, 171, 184 A.2d 540, 542 (1962). Thus, the trial court's determination that the May 22 letter expresses an unconditional acceptance of plaintiffs' offer to modify the agreement must stand unless it is clearly erroneous. *Bemis* v. *Lamb*, 135 Vt. 618, 620, 383 A.2d 614, 617 (1978); V.R.C.P. 52(a). From our review of the record, including the letter and the evidence that West-Col's counsel stated in early June, 1973, that the deficiencies would be corrected, we cannot say that the trial court's interpretation of the letter is clearly erroneous and not fairly and reasonably supported by the record.

■ Appellants next allege error in the admission of the Fire Marshal's report. They claim that the report was admitted contrary to the dictates of 12 V.S.A. §§ 1692, 1697, 1700, 1701, and V.R.C.P. 44(a)(1). In the trial court, however, the objection was based generally on relevancy; it was argued that a Fire Marshal's report was not required by the

agreement and that no modification of the agreement had been shown providing for such a requirement. Because of the difference between the grounds of objection presented below and those presented to us here, this issue has not been preserved for review. V.R.C.P. 46. See *Vladyka* v. *Page*, 135 Vt. 252, 253, 373 A.2d 539, 539–40 (1977).

■ Appellants' third challenge to the trial court's decision urges that the plaintiffs, not West-Col, breached the sales agreement first. Appellants argue that plaintiffs repudiated the contract by demanding compliance with the Fire Marshal's report prior to May 19, thus excusing the absence of valid licenses on May 19. Also, appellants charge that plaintiffs again breached the contract by refusing to close on June 9, when all the required licenses were in effect.

Based on testimony and letters presented in evidence, the trial court interpreted the discussion regarding the fire regulation deficiencies as an offer to change the contract, rather than as a repudiation. Giving due regard to the trial court's opportunity to hear the evidence firsthand, we do not find the trial court's interpretation to be clearly erroneous. Furthermore, from a review of the record, we cannot say that the facts establish that plaintiffs repudiated the agreement prior to May 19 as a matter of law. With regard to the June 9 closing, because of the change in the agreement, the existence or nonexistence of the formerly required licenses was immaterial. The new agreement required West-Col to remedy the fire regulation deficiencies; West-Col clearly breached this agreement by the stated refusal of its president on June 9 to correct those deficiencies.

■ Finally, appellants complain that the trial court failed to make required findings when it dismissed the counterclaim based on slander of title. The trial court stated only: "The allegations of the Counterclaim are not supported by the evidence."

When findings of fact are requested, as they were here, the trial court is bound to make findings upon all material issues raised by the pleadings and evidence. *Lynda Lee Fashions, Inc.* v. *Sharp Offset Printing, Inc.*, 134 Vt. 167, 170, 352 A.2d 676, 677 (1976). But we will not reverse for lack of findings

on material issues where an element of the claim for relief has not been proved at trial. See *In re New England Telephone and Telegraph Co.*, 120 Vt. 181, 193, 136 A.2d 357, 365 (1957).

An essential element of the cause of action for slander of title is special damages. W. Prosser, The Law of Torts § 128, at 920 (4th ed. 1971). These damages must be proved by the injured party as a prerequisite to recovery. *Id.* § 128, at 922. At minimum, the injured party must demonstrate that any damages result from the "slander" and not from other factors. See *Id.* § 128, at 923–24. Here West-Col's expert testified at trial that the fair market value of the subject property had declined $30,000 from the time suit was brought to the date of trial. The basis for his opinion on value at the date of trial, however, was that the "real estate business today is at its worst level in many years." No evidence was presented to tie any damages to the alleged "slander." The failure of proof of special damages renders the trial court's lack of findings harmless.

*Affirmed.*