Christopher J. KOEGEL and Kay Koegel, Appellees,

v.

R MOTORS, INC., Appellant.

No. 88–1063.

Supreme Court of Iowa.

Nov. 22, 1989.

Donald Gonnerman of Davis, Grace, Horvath, Gonnerman & Rouwenhorst, P.C., Des Moines, for appellant.

Thomas E. Leahy of Grefe & Sidney, Des Moines, for appellees.

Considered by SCHULTZ, P.J., and CARTER, LAVORATO, SNELL, and ANDREASEN, JJ.

LAVORATO, Justice.

In this breach of contract action, the plaintiffs obtained a judgment against the defendant following a bench trial. After trial the plaintiffs filed a motion for attorney's fees and costs under Iowa Rule of Civil Procedure 134(c). In their motion the plaintiffs alleged the defendant unreasonably denied their requests for admission. Following the defendant's appeal from the judgment, the district court held that the defendant had indeed unreasonably denied the requests for admission and granted attorney's fees and costs to the plaintiffs.

We reverse and remand with directions.

I. *Background Facts and Proceedings.*

In the summer of 1984 Christopher J. Koegel and his wife, Kay, were in the market for a new Peugeot automobile. At the time they owned two Peugeots. In August 1984 the Koegels visited Tom Lind about the purchase of the new car. Tom Lind and his brother Timothy operated the Peugeot franchise in Waterloo. The two brothers were the sole shareholders of Lind Brothers Motor Corporation Limited, the entity that actually owned the franchise.

On this visit, the Koegels had driven their 1975 Peugeot to Waterloo and showed it to Tom. The Koegels told Tom that they were interested in buying a 1985 Peugeot and using their two Peugeots as trade-ins. Tom expressed an interest in the offer.

On October 1 the Koegels again visited Tom, and at this time Christopher signed a printed order for the purchase of a 1985 Peugeot. Tom signed the order on behalf of Lind Brothers. The order shows a list price of $19,746.49. The order also shows a credit of $6000 as a trade-in allowance for a 1980 Peugeot and $1250 as a trade-in allowance for a 1975 Peugeot.

The Koegels left their 1975 Peugeot with Tom. Christopher endorsed the title to this vehicle in blank and delivered it to Tom. The Koegels agreed to turn over their other Peugeot, the 1980 model, upon delivery of the new car. At this time Tom indicated that delivery of the new car could be expected in sixty to ninety days.

About November 1 Christopher called Tom about the delivery of the new car. Tom told Christopher he expected delivery before Thanksgiving. Christopher called Tom several more times inquiring about delivery. One call was just prior to Thanksgiving, another about December 1, and the third shortly before Christmas. Tom kept assuring Christopher that delivery would be made soon.

Finally on January 16 Christopher informed Tom by telephone that if delivery were not made within a week, he would buy the car elsewhere and hold Tom responsible for any difference in price. Christopher followed up this conversation with a letter to Tom on January 17, confirming essentially what he had said and setting January 25 as a deadline for delivery. Tom did not meet this deadline.

On January 25 the Koegels drove to Kansas City and purchased a 1985 Peugeot from another Peugeot franchisee. The list price was higher and the trade-in allowance for the 1980 Peugeot was less. In addition, the Koegels incurred expenses in making the purchase. In all, the Koegels demanded $4652.26 from Tom. This amount represented these items plus $1250 for the 1975 Peugeot that was left with Tom. Tom later sold the 1975 Peugeot and kept the money.

In May 1984 Peugeot Motors of America, which is the Peugeot franchisor, served Lind Brothers with a notice of termination

of Lind Brothers' Peugeot franchise. Peugeot claimed that Lind Brothers had not kept its commitment for floor planning.

The Transportation Regulation Board heard the matter on August 14 and 15, 1984, and entered a ruling in favor of Lind Brothers on December 19, 1984. During the time the termination proceedings were pending, Peugeot refused to sell Lind Brothers any cars.

The Koegels were unaware of this dispute when the purchase order was signed on October 1. The Koegels were also unaware of several other circumstances that further complicated matters.

In August 1984 R Motors, Inc. agreed to buy the assets of Lind Brothers. R Motors, Inc., is an Iowa corporation, and Robert Rewoldt is its sole shareholder. The sale was never consummated because it was contingent on Rewoldt's acquiring another car franchise in addition to the Peugeot franchise.

Nevertheless in August 1984 R Motors filed an application with the Iowa department of transportation for a license to sell Peugeot automobiles at the address of Lind Brothers in Waterloo. The department issued the license. In the same month Rewoldt filed an affidavit in the termination proceedings before the Transportation Regulation Board in which he stated that R Motors had purchased all of the assets of Lind Brothers. In the following month Rewoldt's attorney told the board that R Motors was in fact the Peugeot franchisee in Waterloo.

And on October 1—the same day Christopher signed the purchase order—R Motors filed with the Iowa secretary of state an election to adopt the assumed name of "Lind Bros. Motors." The following month Tom Lind signed an application requesting the Iowa department of transportation to renew the dealer license of "R Motors, Inc. and/or Lind Bros. Motors Ltd."

Apparently after learning about some of these transactions, the Koegels filed a breach of contract action, not against Lind Brothers but against R Motors. The Koegels sought $4652.26 in damages—the amount they claimed they had suffered

when they had to buy the new Peugeot elsewhere. The petition, which was filed on February 11, 1985, essentially alleged that the Koegels entered a contract with R Motors on October 1, 1984, to purchase a 1985 Peugeot and R Motors failed to deliver it.

The Koegels filed fourteen requests for admission on the same day they filed their petition. See Iowa R.Civ.P. 127. R Motors denied twelve of those requests and admitted two. The twelve requests R Motors denied centered primarily on the Koegels' attempt to establish a contract between R Motors and themselves, and their damages.

The parties tried the case to the court. Just before trial R Motors moved to amend its answer to allege impossibility of performance as a defense. The district court took the motion under advisement but later overruled it. Only two witnesses testified: Christopher Koegel and Tom Lind.

During trial R Motors repeatedly tried to inject issues of actual and apparent authority. It contended the Koegels had the burden to show that Tom Lind was either acting as an agent of R Motors or that R Motors had placed Lind in the position of apparent authority. The Koegels objected, contending the two issues were affirmative defenses which R Motors had not pleaded.

Rather than ruling on the objections, the district court reserved ruling. The court, however, neither ruled on the objections, nor addressed the two issues in its decision. Instead the court found that R Motors was the "real party in interest and a proper party defendant in the case." It did so relying on the admissions in the termination proceedings and the documents filed with the Iowa secretary of state and the Iowa department of transportation.

The court also found that there was a contract between the Koegels and R Motors and that R Motors had breached the contract when it failed to deliver the new car. The court then awarded the Koegels judgment against R Motors for $4348.51 plus costs.

Following the trial, the Koegels filed an application for attorney's fees and costs

under Iowa Rule of Civil Procedure 134(c). The district court did not rule on the motion because R Motors had in the meantime appealed from the judgment. We transferred the case to the court of appeals which affirmed in an unpublished opinion. *Koegel v. R Motors, Inc.,* 423 N.W.2d 907 (Iowa App.1987).

The court of appeals agreed with the district court's findings and upheld the judgment. Although R Motors raised the agency and apparent authority issues, the court of appeals, like the district court, did not address them.

Following the court of appeals' decision, the Koegels renewed their application for attorney's fees and costs. At the hearing on the motion, Rewoldt's attorney examined Rewoldt about the denials of the requests for admission, attempting to show a reasonable basis at the time for such denials. Rewoldt's attorney also tried to examine the Koegels' attorney about the actual time the attorney spent in proving the matters covered by the requests. The court would not permit such an examination.

Following this hearing, the court entered an order finding that R Motors had unreasonably denied the requests for admission. The court also allowed the Koegels the full amount of attorney's fees requested— $5427.50—plus expenses amounting to $587.67. R Motors filed a rule 179(b) motion requesting the court to

> set out specifically those requests it regards as untrue, the reason it regards them as untrue, whether the court feels they were proven at trial, what proof was introduced at trial and what attorney's fees flowed from each request.

*See* Iowa R. Civ. P. 179(b). The motion also called into question the allowance of $587.67 for copy fees and telephone calls that allegedly were not shown to have any connection with the case.

In response to this motion, the district court reduced the judgment for expenses to $400 and reduced the judgment for attorney's fees by $416. The court denied the rule 179(b) motion in all other respects. This appeal by R Motors then followed.

On appeal R Motors raises several issues which boil down to two questions. First, did R Motors have reasonable grounds to believe it might prevail on the matters covered by the requests for admission? Second, did the district court award attorney's fees and costs in excess of those contemplated by Iowa Rule of Civil Procedure 134(c)?

## II. *Iowa Rules of Civil Procedure 127 and 134.*

Iowa Rule of Civil Procedure 127 governs requests for admission. The rule provides in pertinent part:

> A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of R.C.P. 122 [scope of discovery] set forth in the request that relate to statement or opinions of fact or of the application of law to fact, including the genuineness of any documents described in the request....
>
> Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless ... the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter.... If objection is made, the reasons therefor shall be stated. The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify the party's answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder. An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless the party states that the party has made reasonable inquiry and that the information known or readily obtainable by the party is insufficient to enable the party to admit or deny.... [T]he party may, subject to the provisions of R.C.P.

134(c), deny the matter or set forth reasons why the party cannot admit or deny it.

In short, rule 134 is a discovery tool that allows one party to request the opposing party

> to admit the truth of discoverable facts, opinions of fact or application of law to facts. Consequently, the scope of the rule is broad enough to include most every issue at trial.

Cady, *Curbing Litigation Abuse and Misuse: A Judicial Approach*, 36 Drake L. Rev. 483, 507 (1986–87).

A party responding to a request for admission has three choices: admit, object, or deny. An admission conclusively establishes what is requested; a denial places that matter in issue. But the denial triggers the enforcement provisions of the rule if the matter is proven at trial. *Id.* at 508. One of those enforcement provisions is the allowance of attorney's fees and costs incurred in proving the matter as provided in rule 134(c).

Rule 134(c) provides:

> *Expenses on Failure to Admit.* If a party fails to admit the genuineness of any document or the truth of any matter as requested under R.C.P. 127, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that
>
> (1) The request was held objectionable pursuant to R.C.P. 127, or
>
> (2) The admission sought was of no substantial importance, or
>
> (3) The party failing to admit had reasonable ground to believe that he might prevail on the matter, or
>
> (4) There was other good reason for the failure to admit.

Iowa R. Civ. P. 134(c). Rule 134(c) serves to support the purpose underlying requests for admission, which is to expedite trial by limiting the matters in controversy between the parties. An admission relieves a party of the cost of proving the fact or issue. More importantly, it reduces the time necessary to try a case and may eliminate a trial entirely if the admitted matters resolve the case by summary judgment or settlement. When this purpose is side-stepped by a party's unsupported refusal to admit the truth of a requested admission, sanctions are imposed for causing the needless expense in proving the matter. Thus, an award for expenses in these circumstances is not necessarily punitive but may be viewed as remedial.

Cady, 36 Drake L. Rev. at 508.

Imposition of sanctions under rule 134(c) is discretionary. Unless that discretion is abused, we will not disturb the district court's ruling. *Sandhorst v. Mauk's Transfer, Inc.*, 252 N.W.2d 393, 399 (Iowa 1977).

III. *Did R Motors Have Reasonable Grounds to Believe it Might Prevail on the Matters Covered by the Requests for Admission?*

R Motors contends it had reasonable grounds to believe it might prevail on the twelve requested admissions it denied. So it is relying on rule 134(c)(3) to avoid imposition of attorney's fees and costs.

Although a trial may ultimately result in a finding that matters denied were true, this does not necessarily mean the matters were "unreasonably denied." A good illustration of this point is found in *Dyer v. United States*, 633 F.Supp. 750 (D. Or.1985), aff'd 832 F.2d 1062 (9th Cir.1987).

In *Dyer*, the plaintiff had requested the government to admit that wake turbulence from one of its aircraft caused the crash of a plane in which the decedent was a passenger. After a bench trial the trial court found that wake turbulence indeed caused the crash. Following the trial court's decision, the plaintiff asked the court to grant sanctions for failure to admit pursuant to Federal Rule of Civil Procedure 37(c). (This federal rule tracks verbatim our rule 134(c).) The court refused to do so, finding

that the government had reasonable grounds to believe it might prevail on the matter. The court found that the requested admission involved a close factual question. More importantly, the court found that the government relied in good faith on its expert who testified the crash was caused by factors other than wake turbulence. *Dyer*, 633 F.Supp. at 758–59.

■ The language in rule 134(c)(3)—the party failing to admit had reasonable ground to believe that he might prevail on the matter—implies two things. First, the determination whether the denying party had reasonable ground is based on what that party knew *at the time of the denial.* Second, whether the denying party had a reasonable ground is a factual determination. In making this factual determination the district court must employ an objective test: could a person in the denying party's position, armed with the information available at the time, reasonably believe there was a basis to deny the request?

■ Here the requests primarily asked for an admission that there was an agreement between the Koegels and R Motors, an admission about the various terms of the agreement, an admission that R Motors breached the agreement, and an admission as to the elements of Koegels' damages. R Motors responded by simply denying the requests. Its reason for doing so centered primarily on a mixed question of fact and law: R Motors believed Tom Lind had no authority—actual or apparent—to bind R Motors to any agreement with the Koegels.

R Motors could have avoided the problem by simply expanding its denial to include its lack of authority defense. And, perhaps, as the district court found, R Motors' failure to qualify the denials by adding this explanation was not a good faith response within the meaning of rule 127. Rule 127, however, has its own sanctions for a failure to properly respond. *See* Iowa R. Civ. P. 127. Those are not the sanctions that the Koegels sought.

Rather they sought sanctions under rule 134(c). Under rule 134(c), R Motors could have avoided those sanctions by showing it had reasonable grounds to prevail on the matters covered by the requests for admission. In short, the Koegels could not recover sanctions under rule 134(c) by merely showing R Motors failed to make a good faith response under rule 127.

The Koegels were not entirely in the dark when they received the denials to their requests for admission. Nor were they entirely without fault in this matter. They must have had an inkling why R Motors filed answers simply denying the requests. Why else would they sue R Motors instead of Lind Brothers?

If the Koegels were not satisfied with R Motors' answers, the Koegels should have moved to determine the sufficiency of the answers and for expenses in connection with this motion under rule 127. Rule 127 provides in relevant part:

> The party who has requested the admission may move to determine the sufficiency of the answers.... If the court determines that an answer does not comply with the requirements of this rule, it may order either that the matter is admitted or that an amended answer be served.... The provisions of R.C.P. 134(a)(4) apply to the award of expenses incurred in relation to the motion.

Iowa R. Civ. P. 127. Court intervention at that point might have cleared up the matter entirely.

It is true that the issue of authority was neither addressed in the original trial nor on appeal. Nevertheless, on the rule 134(c) motion the district court should have determined whether R Motors had reasonable grounds, at the time it denied the requests, to believe its lack of authority defense was good. Our reading of the district court's ruling convinces us the district court did not address this issue. Rather, the tenor of the ruling indicates that the district court may have been influenced by the trial court's findings against R Motors in the original trial. As we said, a finding at trial that the matters denied are true does not necessarily mean the matters were unreasonably denied.

■ R Motors preserved error when it filed a rule 179(b) motion following the

district court's ruling on the motion for sanctions. In the rule 179(b) motion R Motors asked the court to set out specifically those denials the court regarded as untrue, and the reasons why the court regarded the denials as untrue. *See* Iowa R. Civ. P. 179(b). We think this sufficiently alerted the district court to its duty to make findings as to each requested admission. Because the district court did not make such findings, we conclude the district court abused its discretion. We reverse and remand on this issue for further proceedings consistent with this opinion.

IV. *Did the District Court Award Attorney's Fees and Costs in Excess of Those Contemplated by Rule of Civil Procedure 134(c)?*

Because of our holding in division III, this second issue is moot. Nevertheless we address it because the district court may need to determine again what amount of attorney's fees and costs to award.

Under rule 134(c) the moving party is entitled to recover reasonable expenses, including reasonable attorney's fees, incurred in proving the truth of the matters that should have been admitted.

The district court allowed substantially all of the attorney's fees and costs connected with the case. It made no findings as to what part of the fees and costs were attributable to proving the matters denied. We are not able to tell from the record whether all of the attorney's fees and costs were actually so incurred.

R Motors also preserved error on this issue. In its rule 179(b) motion R Motors alleged that only costs and attorney's fees associated with proving the matters that should have been admitted are allowable as expenses. The motion also challenges the court's ruling on the basis that the court made no findings as to what amounts of the costs and attorney's fees were incurred in proving the matters that should have been admitted.

On remand if the district court finds that any of the requests should have been admitted, it shall permit R Motors to examine the Koegels' attorney about what amounts of costs and attorney's fees were incurred in proving the matters that should have been admitted. In its ruling the court shall make specific findings as to those amounts.

REVERSED AND REMANDED WITH DIRECTIONS.