## Housing Vermont v. Goldsmith & Morris

[685 A.2d 1086]

No. 95-292

Present: **Dooley, Morse and Johnson, JJ., and Norton and Teachout, Supr. JJ.,**
**Specially Assigned**

Opinion Filed August 23, 1996

*Neil H. Mickenberg* of *Mickenberg, Dunn, Sirotkin & Dorsch*, Burlington, for Plaintiff-Appellee.

*Michael B. Clapp* of *Dinse, Erdmann & Clapp*, Burlington, for Defendant-Appellant.

**Morse, J.** Defendant Goldsmith and Morris Architects (Goldsmith) appeals from a judgment in favor of plaintiff Housing Vermont in an

architectural malpractice action. Goldsmith claims that the court erred in construing the contract between the parties and in imposing discovery sanctions. We affirm for the most part, but reverse the award of discovery sanctions.

Housing Vermont, a nonprofit corporation that develops affordable housing, is the assignee of claims originally brought by the Riverside Housing Partnership. Riverside owns the Salmon Run housing project, the development at issue. The Salmon Run Project was initiated by the Davis Company in the summer of 1987. Davis Company secured the resources the project required, including architectural and engineering services, building permits, financing, and an option on the site. It sold the project to Riverside in November of 1988. As a component of the sale, the Davis Company assigned its rights under all contracts related to the project to Riverside, including rights to the architectural design services of defendant Goldsmith and Morris Architects, and to the services of Krebs and Lansing, a civil engineering firm.

Located in a ravine, the Salmon Run site was very steep and technically difficult to develop. At the crux of this case is the question of responsibility for producing the final grading plan for the space immediately surrounding the buildings, an area known as the courtyard. Goldsmith contends that Krebs and Lansing was responsible for the final grading plan while Housing Vermont claims that the plan was Goldsmith's responsibility.

Goldsmith produced a site plan, "SP-1", which contained grading information and was, in fact, used to construct the grades in the courtyard. The steep slopes depicted in SP-1 proved to be unstable and had to be redesigned and stabilized at substantial additional cost. At trial, the court found that Goldsmith was responsible for producing the final grading plan, and concluded that SP-1 did not meet the standard of care required of architects in producing final grading plans. The court awarded Housing Vermont judgment in the amount of $100,469.92 plus prejudgment interest and costs. Upon Housing Vermont's motion, the court also imposed discovery sanctions in the amount of $14,446 for Goldsmith's failure to admit certain matters of proof.

## I.

Goldsmith's primary claim is that the trial court erred in finding that it was responsible for producing the final grading plan for the courtyard area. The agreement between Goldsmith and Riverside

was initially formalized in a letter and an American Institute of Architects (AIA) document called a "Standard Form of Agreement Between Owner and Architect." These documents obligated Goldsmith to produce a site plan for construction. Subsequently the agreement was modified to provide Goldsmith with extra compensation for "grading plans to date." Goldsmith claims that nothing on the face of these documents obligated it to create a final grading plan and that the court must have erroneously relied on parol evidence to support its finding that Goldsmith was responsible for the plan. Goldsmith contends as well that construction of contract terms is a question of law, and claims that we must analyze the contract without giving any deference to the trial court's interpretation.

We note first that the parol evidence argument was not made before the trial court. Indeed, the record reveals that Goldsmith's own examination of witnesses elicited some of the evidence in question, and that Goldsmith did not object to its admission at trial. Thus this claim is waived. See *Morais v. Yee*, 162 Vt. 366, 372, 648 A.2d 405, 410 (1994) (argument not made before trial court will not be considered on appeal).

Furthermore, although Goldsmith is correct that, generally speaking, construction of contract terms is a matter of law, *Ianelli v. Standish*, 156 Vt. 386, 389, 592 A.2d 901, 903 (1991), where the meaning of a contract is uncertain, the intent of the parties becomes a question of fact. *United Ry. Supply & Serv. Ltd. v. Boston & Maine Corp.*, 148 Vt. 454, 457, 535 A.2d 325, 327 (1987); *Gardner v. West-Col, Inc.*, 136 Vt. 381, 385, 392 A.2d 383, 386 (1978). Thus, the trial court's finding that Goldsmith was responsible for the grading plan is entitled to substantial deference. See *Mullin v. Phelps*, 162 Vt. 250, 260, 647 A.2d 714, 720 (1994) (trial court's findings of fact reviewed only for clear error).

█ A review of the record reveals that the court's finding is supported by both testimonial and documentary evidence. The court found, based on expert testimony, that an architectural document is not stamped with the seal of the architect unless it is true, complete and ready to use for construction. SP-1 was stamped with Goldsmith's seal. When SP-1 was delivered in final form, defendant also signed a "Design Architect's Certification and Acknowledgement," which stated that upon the knowledge, belief and professional judgment of Goldsmith, soil and ground conditions would not impair the structural soundness of the project. In addition, Larry Williams, who worked for Housing Vermont's predecessor in title, testified that Goldsmith was

responsible for designing the grading plan for the courtyard and had assured him that the grades depicted on SP-1 would work. Other testimony indicated that Goldsmith knew that SP-1 was being used for construction purposes and did nothing to intervene or to suggest that the plan was preliminary and not suitable as a basis for construction. Bearing in mind that the credibility of witnesses and the persuasive effect of evidence are for the trial court to determine, this evidence is more than adequate to sustain the court's finding. *Roy v. Poquette*, 147 Vt. 332, 333, 515 A.2d 1072, 1073 (1986); see also *Mullin*, 162 Vt. at 260, 647 A.2d at 720 (finding will not be disturbed unless appellant can show there is no credible evidence to support it).

Thus, even if it had not been waived, defendant's parol evidence argument would fail. The parol evidence rule bars the admission of evidence of a prior or contemporaneous oral agreement that varies or contradicts the terms of a written agreement. *New England Educ. Training Serv., Inc. v. Silver St. Partnership*, 156 Vt. 604, 609, 595 A.2d 1341, 1344 (1991). None of the evidence the court considered contradicted the terms of the AIA document or the subsequent written modification. Instead the evidence contradicted the construction of the contract that defendant advanced, a construction that the trial court rejected.

Likewise, defendant's promissory estoppel argument must fail. That argument is based on a memorandum sent to defendant by Larry Williams in which Williams stated "I need 10 copies of grading plan with first floor elevations of buildings for use in estimating site work costs. Plan to be reviewed, revised as required, and drawn in final form by Bob Krebs for final pricing." Defendant contends that he produced a preliminary grading plan in reliance on this letter and that plaintiff should be estopped from asserting that defendant was responsible for the final grading plan. The parties do not dispute, however, that a contract governed their relationship. Thus the doctrine of promissory estoppel does not apply here. See *Estate of Sawyer v. Crowell*, 151 Vt. 287, 294, 559 A.2d 687, 692 (1989) (where relationship governed by contract, promissory estoppel doctrine does not arise); *Big G Corp. v. Henry*, 148 Vt. 589, 594, 536 A.2d 559, 562 (1987) (doctrine of promissory estoppel applies only where there is no contract).

Instead, at issue in this case is what, exactly, defendant's contractual obligations were. As noted above, the court found that defendant was responsible for the final grading plan and thus necessarily

rejected defendant's interpretation of the above memorandum. The court's finding is supported by the record and will not be disturbed.

## II.

Goldsmith claims that the following contract provisions shield it from liability for cost overruns proximately caused by its malpractice:

§ 5.2.1 [T]he Architect cannot and does not warrant or represent that bids or negotiated prices will not vary from the Owner's Project budget or from any estimate of Construction Cost or evaluation prepared or agreed to by the Architect.

§ 5.2.2 No fixed limit of Construction Cost shall be established as a condition of this Agreement by the furnishing, proposal or establishment of a Project budget, unless such fixed limit has been agreed upon in writing and signed by the parties hereto.

Contractual disclaimers of liability for negligence have traditionally been disfavored. *Colgan v. Agway, Inc.*, 150 Vt. 373, 375, 553 A.2d 143, 145 (1988). They are subject to more exacting judicial scrutiny than other contractual provisions, and thus a greater degree of clarity is required to make them effective. *Id.* Such a provision will not be enforced unless its language makes the intention of both parties to relieve the defendant of liability unmistakable. *Id.* The language above, a broadly worded disclaimer, does not meet this standard. It contains no reference to negligence or wrongful conduct of any kind, and thus cannot insulate defendant from liability for malpractice.

## III.

We depart from the trial court only on the issue of discovery sanctions. After trial, Housing Vermont moved for attorney's fees under V.R.C.P. 37(c), contending that Goldsmith should have admitted its responsibility for the final grading plan in response to interrogatories. See V.R.C.P. 36 (requests for admission). Goldsmith did not submit an opposing memorandum. The trial court summarily granted the motion. Goldsmith claims that the court erred in granting Housing Vermont's motion, because a genuine issue existed regarding whether defendant was responsible for the final grading plan. Goldsmith argues, as well, that there was no need to file an opposing

memorandum because the basis for its opposition was evident from the trial.

The purpose of procedural rules such as V.R.C.P. 36 and 37(c) is to secure the admission of facts that are not disputed, and thereby simplify litigation and promote settlement. See *Chem-Pac, Inc. v. Simborg*, 495 N.E.2d 1124, 1127 (Ill. App. Ct. 1986); *Morgan v. Demille*, 799 P.2d 561, 564 (Nev. 1990). In this case, the fact in question was disputed, and the "truth" of the matter was established only through lengthy and detailed litigation. Yet Housing Vermont, in essence, wanted Goldsmith to concede liability prior to trial, and the court sanctioned it for not doing so. The fact that a matter denied before trial is ultimately found to be true does not necessarily mean that denial was unjustified for the purposes of Rule 37(c). See Reporter's Notes, V.R.C.P. 37(c)(3) (existence of genuine issue as to matter in question justifies denial); *Koegel v. R Motors, Inc.*, 448 N.W.2d 452, 456 (Iowa 1989). If V.R.C.P. 37(c) is extended to cover all disputed issues that are established as fact only through a general verdict, the prevailing party would routinely be awarded fees and expenses. This is not the purpose of V.R.C.P. 37(c). Goldsmith was not required to concede liability. See *Chem-Pac*, 495 N.E.2d at 1128.

*The award of discovery sanctions in the amount of $14,446 is reversed; otherwise, affirmed.*