**IN THE COURT OF APPEALS OF IOWA**

No. 23-0329
Filed January 10, 2024

**IN RE THE MARRIAGE OF RENATA JEAN JOHNSTON
AND JOSEPH LEO JOHNSTON**

**Upon the Petition of
RENATA JEAN JOHNSTON,**
        Petitioner-Appellee,

**And Concerning
JOSEPH LEO JOHNSTON,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Cerro Gordo County, James M.

Drew, Judge.

        A father appeals from the order granting in part his petition to modify the

physical-care, visitation, and child-support provisions of a marriage dissolution

decree. **AFFIRMED AS MODIFIED**.

        Austin J. Luse of Balduchi Law Office, P.C., Des Moines, for appellant.

        Sarah A. Reindl of Reindl Law Firm, PLC, Mason City, for appellee.

        Considered by Bower, C.J., and Buller and Langholz, JJ.

**LANGHOLZ, Judge.**

Joseph and Renata Johnston divorced in April 2021 after an eleven-year marriage. The original dissolution decree adopted their stipulation to grant Renata physical care of their two school-aged children with visitation for Joseph. At the time, Joseph had a job that took him to Alaska for alternating three-week periods with the same time off from work back at home in Clear Lake. So the decree provided that his visitation was "when he is not working following a 2-2-3 schedule that continues to rotate." This meant that Joseph had no visitation for the time he was in Alaska but then would have alternating two- or three-day overnight visitation periods during the other half of the time, when he was in Clear Lake.

About four months later, Joseph took a new, lower-paying job in Clear Lake with a more typical schedule working every weekday, which meant he was only entitled to visitation on alternating weekends for two or three days respectively. While not guaranteed by the decree, he and Renata also agreed to one more overnight visitation every Wednesday. In May 2022, Joseph filed this modification petition seeking joint physical care—to essentially extend the original parenting schedule from just when he was off work for three weeks at a time to every week whether working or not—or increased visitation rights. He also sought to reduce his child support obligation.

The district court modified Joseph's visitation rights slightly, granting him visitation every other weekend for three nights and every Wednesday evening for four hours. But the court declined to change the physical-care or child-support award and awarded Renata $7500 in attorney fees.

Joseph now appeals, arguing that the district court should have granted joint physical care. He also alternatively argues that the district court should have significantly expanded his visitation—or at least granted him the Wednesday evening overnight visitation that the parties had been voluntarily following for some time. He challenges the child support award as well, contending that the district court erred in finding Renata's income calculations to be more accurate and that a proper calculation would have made modification mandatory. And Joseph argues that the district court abused its discretion in awarding Renata attorney fees and should have awarded him fees instead—both as a prevailing party and under Iowa Rule of Civil Procedure 1.517(3)(b) for Renata's refusal to make certain admissions before trial.

But Joseph has not met his heavy burden to modify the current physical care placement with Renata to joint physical care. Nor does his changed employment justify a significant boost in his visitation. Yet we agree with him that his weekly Wednesday night visitation should be overnight rather than just for four hours as the district court ordered. Given our deference to the district court's fact findings, we cannot say that the court erred in declining to modify the child-support award. And it did not abuse its discretion in awarding attorney fees to only Renata and not Joseph. We likewise decline to award Joseph appellate attorney fees. So aside from our further change to the visitation schedule, we affirm the district court's modification order.

## I. Physical Care

Once physical care of children has been set in a dissolution decree, "it should be disturbed only for the most cogent reasons." *In re Marriage of Frederici*,

338 N.W.2d 156, 158 (Iowa 1983). And so, a parent seeking to modify a physical-care provision bears a "heavy burden." *Id.* Joseph seeks to change the children's placement from Renata's physical care to joint physical care. He must thus prove by a preponderance of the evidence that a substantial and material change in circumstances arose after entry of the decree that relates to the children's welfare, is more or less permanent, and was not originally contemplated by the court. *See In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). If such a qualifying change is found, then he must show that joint physical care better serves the children's interests than their current placement in Renata's physical care. *See id.*; *see also In re Marriage of Schiltz*, No. 20-1740, 2021 WL 5105921, at *2 (Iowa Ct. App. Nov. 3, 2021); *In re Marriage of Kelly*, No. 19-1295, 2020 WL 3571863, at *3 (Iowa Ct. App. July 1, 2020).

We review a district court's decision denying modification of a physical-care provision de novo. *See Hoffman*, 867 N.W.2d at 32. But because "a court is greatly helped in making a wise decision about the parties by listening to them and watching them in person," we give weight to a district court's fact findings—even though we are not bound by them. *In re Marriage of Callahan*, 214 N.W.2d 133, 136 (Iowa 1974).

The change in Joseph's employment was no doubt significant to him and his daily life. And as detailed in Division II below, it was material to the operation of his visitation schedule. But we cannot say it was so substantial and material a change related to the children's welfare that it justifies modification of physical care. *See Hoffman*, 867 N.W.2d at 37 (holding that seventy-mile move of parent

with physical care of children away from the other parent did not "constitute[] a substantial change of circumstances affecting the best interests of the children").

Nor can we conclude that modifying the children's physical care placement with Renata would be in their best interest. As the district court reasoned—relying on its observations throughout trial and the dueling contempt allegations—"it is unreasonable to believe that Renata and Joseph are capable of the type of co-parenting required for successful joint physical care." *See In re Marriage of Hansen*, 733 N.W.2d 683, 697–99 (Iowa 2007). Even many of Joseph's arguments on appeal critiquing Renata are thus self-defeating in a quest to have *joint* physical care, and the parties need to cooperate on a level above what has been necessary up until now. Perhaps it would be a closer call if we were reviewing the original decree. But we are not. Joseph seeks to modify "a functioning physical-care arrangement." *Schiltz*, 2021 WL 5105821, at *2. And we will not lightly do so.

Joseph stresses the extensive visitation that he had when not working in Alaska, framing it as "uncontested" that they "operated on a joint or shared physical care-like schedule, splitting visitation with children down the middle." But this does not change the modification analysis. Joseph was not awarded joint physical care in the original decree. And having visitation for half of the fifty percent of the time he was present in Iowa is very different than having joint physical care. Indeed, seventy-five percent of the time Renata was still the children's caretaker. And most of that time she was solely responsible without any assistance or visitation from Joseph. The visitation in the original decree was a creative solution to maintain significant father–children contact given Joseph's unusual work schedule. But it

does not follow that an end of that work schedule means joint physical care is justified. We thus affirm the district court's denial of Joseph's request to modify the decree to obtain joint physical care.

## II. Visitation

Compared to his unsuccessful request for joint physical care, Joseph has a less demanding burden to modify the visitation provisions of the decree. *See In re Marriage of Salmon*, 519 N.W.2d 94, 95–96 (Iowa Ct. App. 1994). While most of the analysis is similar, "a much less extensive change of circumstances need be shown." *Donovan v. Donovan*, 212 N.W.2d 451, 453 (Iowa 1973). This is because of the strong interests in continued contact with the noncustodial parent, the greater likelihood that the details of the proper visitation schedule will "require change over time," and the lower impact of visitation modifications on "established patterns of care and emotional bonds with the primary caretaker." *In re Marriage of Brown*, 778 N.W.2d 47, 52 (Iowa Ct. App. 2009) (cleaned up). As with the physical-care decision, we review the district court de novo. *See id.* at 50.

Like the district court, we find that Joseph's change of employment—from a job that kept him in Alaska working nonstop for two or three weeks at a time to one with a more traditional workday and workweek based in Clear Lake—was a material change in circumstances, more or less permanent, and not contemplated at the time of the original decree that justifies modifying the visitation schedule. This is particularly so given the unusual structure of the schedule to provide visitation only when Joseph "is not working." If the schedule were not modified— by the court or voluntarily by agreement of the parties—Joseph's job change would curtail the frequency and duration of his visitation. He would go from seeing his

children every two or three *days* during the half-time he was home to only seeing them about every two *weeks*. And from having them present for fourteen overnights in every six-week period to only seven. This reduction in contact with their father would not be in the children's best interests.

True, the decree permits the parties to agree to extra visitation. And they eventually did so, adding a Wednesday overnight every week at the encouragement of the district court during prior contempt proceedings over the interpretation of the decree after Joseph's new job. But this agreement does not cut against modifying visitation; it supports it. The parties have shown that the weekly Wednesday overnights have worked well to supplement the alternating weekends of visitation. It is in the children's best interests to adjust the decree to guarantee this stable contact with their father in the terms of the visitation schedule rather than leaving it solely in Renata's discretion. And adjusting the terms will reduce possible confusion and conflict between the parties going forward.

The district court seemed to agree with all of this. But without explanation, in modifying the visitation schedule, the court added only four hours of visitation every Wednesday evening instead of an overnight visit as the parties had been successfully following. Joseph raised this discrepancy—among several other issues—in his reconsideration motion, which was denied again without any analysis. At trial, even Renata agreed that the Wednesday overnight visitations were working well and did not seek any different change to the schedule. Neither

did she offer any specific argument against Joseph's request in resisting his reconsideration motion or here on appeal.[1]

We thus agree with Joseph that the decree should also be modified to provide for weekly overnight visitation every Wednesday from at least 5:00 p.m. until school starts the next morning or until 8:00 a.m. on Thursdays when there is no school.[2] We do not alter the rest of the district court's modification of the visitation schedule. This schedule—with the extra Wednesday overnights—strikes the right balance between the interests of the children in maintaining contact with both parents and providing stability from the placement with Renata. Indeed, it is a slight increase in overnights—from roughly a quarter of the nights to a third of the nights in every six-week period—compared to before the job change.[3] And we are not convinced that any further increase is justified because of the change in

---

[1] Renata summarily resisted reconsideration, arguing only that the decision "should be undisturbed" because "[t]he Findings of Fact by the Court are supported by the record and the Conclusions of Law are supported by the law." On appeal, she waived filing a brief, relying "on the record made at trial, her exhibits admitted at trial, and the trial court's ruling which is supported by the record and the law."

[2] Of course, the parties remain free to expand visitation further if, for example, they mutually agree that an earlier start time is more convenient. While the district court modification order began its four hours of visitation immediately after school at 3:30 p.m., it does not appear that the parties began their overnights this early. Indeed, they litigated whether the children could first go to Renata's home after school before beginning the Wednesday and weekend overnight visitation periods. And the district court then decided that 5:00 p.m. was the more appropriate start time for the weekend overnight visitation and that it had no authority to interpret the start time for the voluntary Wednesday visitation. We thus set the visitation to begin at 5:00 p.m. consistent with these past practices.

[3] Before Joseph's job change, it appears he would have had nine or twelve overnights every six weeks depending on the rotation. In this modified schedule, he consistently has fifteen overnights every six weeks. Without the addition of the Wednesday overnights, the number would have dropped down to only nine.

circumstances since the original decree. So we affirm the district court's visitation ruling as modified by this opinion.

### III. Child Support

We also review the denial of a request to modify the child-support award in a dissolution decree de novo. *See In re Marriage of McKenzie*, 709 N.W.2d 528, 531 (Iowa 2006). But as with other modification decisions, "[w]e give weight to the district court's findings of fact" used in calculating the award amount under the child-support guidelines, especially when based on a credibility determination. *Markey v. Carney*, 705 N.W.2d 13, 20 (Iowa 2005) (cleaned up). And given the district court's "reasonable discretion in determining whether modification is warranted," we will not disturb that decision "unless there is a failure to do equity." *McKenzie*, 709 N.W.2d at 531 (cleaned up).

Modifications of child-support awards are governed by Iowa Code section 598.21C (2022). In arguing that his child-support obligations should be decreased, Joseph relies on paragraph (2)(a) of that section, which provides that a substantial change of circumstances justifying modification is automatically found when the current child support award "varies by ten percent or more from the amount which would be due pursuant to the most current child support guidelines." Iowa Code § 598.21C(2)(a). But the district court found explicitly and implicitly that Renata's child-support-guidelines worksheet was a more accurate reflection of the parties' financial status. And using those figures, the recalculated amount under the current guidelines is $1870.87 per month—only 1.6% less than the current $1900.82 award and not even close to a variance of ten percent or more. So a modification of the award was unwarranted under section 598.21C(2)(a).

Joseph mainly argues that the district court should not have believed Renata's testimony and documentary evidence about her income and should have found—in agreement with him—that her income was higher. But these are precisely the credibility determinations that we give weight to. *See Callahan*, 214 N.W.2d at 136. And we see no basis in the cold record to second-guess the district court's finding.

Joseph also makes a conclusory assertion that even if we accept the district court's finding of Renata's income, "a running of the guidelines equates to $1,690.57," an amount that would be more than ten percent below his current obligation. But Joseph fails to explain how he calculated that amount or why it differs from the result of the calculation in the guidelines worksheet used by the district court. And we have probed the entire record and also see no argument or documentation supporting Joseph's calculated amount hidden there. The district court did not fail to do equity in denying Joseph's request to modify his child-support obligation.

### IV.     Trial and Appellate Attorney Fees

Joseph contends that the district court should have awarded him attorney fees of $2500 rather than making him pay for $7500 of Renata's fees. He also seeks his appellate fees. We review a district court's award of attorney fees in a modification proceeding for abuse of discretion. *See In re Marriage of Michael*, 839 N.W.2d 630, 639 (Iowa 2013). And "[w]e have similar discretion in awarding appellate attorney fees." *Id.* This is because under Iowa Code section 598.36, either court "*may* award attorney fees to the prevailing party in an amount deemed reasonable by the court." Iowa Code § 598.36 (emphasis added). "[T]he

controlling considerations in the attorney fee determination are the parties' respective abilities to pay." *Michael*, 839 N.W.2d at 639. For appellate fees, we also consider "the relative merits of the appeal." *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005) (citation omitted).

Beyond section 598.36, Joseph also relies on Iowa Rule of Civil Procedure 1.517(3)(b) for his requested fees. That rule authorizes an award of fees when "a party fails to admit . . . the truth of any matter as requested under rule 1.510" and "the party requesting the admissions thereafter proves . . . the truth of the matter" unless the request was improper or for an issue "of no substantial importance" or "[t]he party failing to admit had reasonable grounds to believe that the party might prevail on the matter" or another "good reason for the failure to admit." Iowa R. Civ. P. 1.517(3)(b); *see Koegel v. R Motors, Inc.*, 448 N.W.2d 452, 455–58 (Iowa 1989). But Joseph failed to preserve error on this issue because the district court never ruled on his request for fees under Rule 1.517(3)(b), and he did not request a ruling on that issue in his reconsideration motion. *See Okland*, 699 N.W.2d at 270. Since the issue was not preserved for our review, we decline to consider it for the first time on appeal.

On the attorney-fees issues that were preserved, the district court did not abuse its discretion in awarding Renata a portion of her trial attorney fees and declining to award Joseph his fees. While both parties prevailed to some extent in the district court, on the contested issues—physical care and child support— Renata was a prevailing party. More importantly, because Joseph's income is nearly four times greater than Renata's, he has a greater ability to pay—and she has a greater need for him to pay—the attorney fees.

Similarly on appeal, Joseph did not succeed on most of the issues he raised. And given the financial circumstances, he has a greater ability to pay his fees than does Renata. We thus decline to award appellate attorney fees and assess appellate costs to Joseph.

**AFFIRMED AS MODIFIED.**