### In re Appeal of Janet HERRICK

[742 A.2d 752]

No. 98-267

October 14, 1999. The City of Montpelier appeals from a judgment of the Environmental Court in favor of Janet Herrick in her appeal from the City's denial of a home occupation permit for the family day care business she operates in her home. The City contends the court erred in concluding that: (1) the day care use was reviewable as a home occupation under state law and the City's zoning ordinance; (2) the day care use met state and local home-occupation standards; and (3) the City's finding of a zoning violation was without merit. We affirm.

Since 1984, Herrick has operated a registered family day care business in her residence on Elm Street in Montpelier. In 1995, in response to a neighbor's concern about traffic in the area, the City contacted Herrick and informed her that she required a zoning permit to operate the business. In June 1996, Herrick submitted an application for a home occupation

permit. The application stated that she served up to ten children, and Herrick later testified that she normally took care of six preschool children from the morning to the late afternoon, and four additional children after school. The City's zoning administrator denied the application on the ground that a day care facility serving more than six children was not a permitted home occupation under the City's zoning regulations and required instead a conditional use permit (CUP). Herrick appealed to the zoning board of adjustment, which affirmed the zoning administrator's decision. The administrator then issued a notice of zoning violation for operating the business without the required CUP, which the ZBA also affirmed. Herrick appealed both rulings to the Environmental Court, where they were consolidated for purposes of trial and review.

In response to cross-motions for summary judgment, the court ruled that the day care use was entitled to be reviewed as a home occupation, and scheduled an evidentiary hearing to determine whether the day care use satisfied state and local standards for a home occupation. Following the hearing, the court issued a written decision, ruling that the day care use satisfied the standards for a home occupation, and granted the application conditioned upon Herrick's obtaining an agreement with a neighboring church for use of their lot as a parking and unloading area in compliance with the City's parking standards. The court also ruled in favor of Herrick in her appeal from the notice of zoning violation. This appeal followed.

## I.

The City first contends the court erred in ruling that the day care use was entitled to be evaluated under 24 V.S.A. § 4406(3), which provides: *"Protection of home occupations*: No [municipal zoning] regulation may infringe upon the right of any resident to use a minor portion of a dwelling for an occupation which is customary in residential areas and which does not change the character thereof." The City argues that the Legislature could not have considered day care facilities to qualify as home occupations under § 4406(3) because of a more recent enactment, 24 V.S.A. § 4409(f), which provides: "A state registered or licensed day care facility serving six or fewer children shall be considered by right to constitute a permitted single-family residential use of property."[*] Observing that § 4409(f) was obviously intended to protect and promote day care facilities against exclusionary zoning, the City asserts that the statute would have been superfluous if day care uses were already protected as "home occupations" under § 4406(3).

The argument is unpersuasive. As the trial court found, the two statutes are easily harmonized. Under § 4406(3), a home occupation plainly must occur in the owner's residence. Section 4409(f), however, extends a broader umbrella of protection to day care facilities with six or fewer children than might otherwise be available under § 4406(3), as it applies regardless of whether the business is conducted in the day care owner's residence. Thus, we are not persuaded that § 4409(f) precludes consideration of a day care use as a home occupation under § 4406(3).

The City also contends that day care facilities are definitionally precluded from consideration as home occupations under § 4406(3) because the statute requires that all business activity be conducted inside the dwelling, a requirement fundamentally inconsistent with the state requirement that day care facilities provide

---

[*] Section 4409(f) was recently amended by the Legislature to substitute "family day care home" for "or licensed day care facility." 1999, No. 37, § 1. The amendment does not affect our analysis.

both indoor and outdoor activities. Contrary to the City's claim, however, § 4406(3) does not specifically define "dwelling" or expressly restrict all occupational activity to the inside of a dwelling. Here, moreover, it was undisputed that the children's outside play did not occur in an open yard or driveway unconnected to the residence, but rather on a rear porch or deck that was reasonably construed to be a part of the dwelling. Although, as discussed below, the presence of outside activity is certainly relevant to whether an occupation is consistent with the residential character of the surrounding neighborhood, the City cites no authority to support the claim that a home occupation under § 4406(3) must be confined in all respects to the interior of an enclosed structure. Accordingly, we conclude the trial court correctly ruled that the day care was entitled to be evaluated as a home occupation under § 4406(3).

## II.

The City next contends the court erred in several respects in concluding that the day care use met state and local standards for a home occupation. First, the City asserts the court miscalculated the percentage of the dwelling used for day care purposes. As noted, 24 V.S.A. § 4406(3) guarantees the right "to use a minor portion of a dwelling" for a home occupation, and the City's regulations allow up to fifty percent of the dwelling for such use. The court found that Herrick met these requirements based, in part, upon a finding that she used one-third of the living room in the house and one-third of the front porch for day care purposes. The City argues that the evidence failed to substantiate these findings, and in particular failed to support the fractional values assigned to each of the spaces in question. Although there was no direct evidence specifying the percentages derived by the court, the testimony as to the

specific uses made of each of the areas in question, together with the stipulated dimensions of the dwelling, amply supported the court's findings. See *Housing Vermont v. Goldsmith & Morris*, 165 Vt. 428, 431, 685 A.2d 1086, 1088 (1996) (court's findings will not be disturbed unless there is no credible evidence to support them).

The City also claims in this regard that the court improperly relied on its observations during a site visit without placing those findings on the record. See *In re Quechee Lakes Corp.*, 154 Vt. 543, 552, 580 A.2d 957, 962 (1990) (site observations should be placed on record to facilitate rebuttal and review). The court referred only in passing to the site visit, however, and the testimony and the documentary evidence were more than sufficient — standing alone — to support the findings. Accordingly, any error in this regard was harmless.

The City next complains that Herrick's original permit application had identified one-half rather than one-third of the living room for day care use. Neither the zoning board of adjustment nor the court, however, was bound by the original permit application, or required to ignore relevant supplemental evidence. Moreover, the City does not contend that the difference of approximately 40 square feet between the two measurements was fatal to the court's finding that the day care facility complied with state and local standards. Accordingly, we find no error in the court's calculation of the area of the dwelling used for day care purposes.

The City further contends the court erred in finding that the day care facility satisfied the provision of the City's zoning ordinance which provided that "exterior storage of materials and exterior indication of the home occupation or variation from the residential character of the principal structure shall not be permitted." Specifically, the City argues that the use of the rear deck for children's play and for storage of play materials during the

summer months violated this prohibition. The court concluded otherwise, observing that even if the rear deck were visible from the street (the evidence suggested otherwise), "there is no indication, such as a sign or distinctive commercial paint job, that the play area is in use for a business rather than a household. Nothing about the use of the outdoor deck for play causes a variation from the residential character of the house itself."

The City claims that the court's finding was immaterial because both § 4406(3) and the zoning ordinance prohibit any exterior manifestation of a home occupation, regardless of its visibility from a public place or impact on the residential character of the area. We disagree. As noted, nothing in the language of § 4406(3) prohibits the incidental use of an exterior portion of a residence in connection with a home occupation. To the extent that the City's zoning ordinance provides otherwise, it represents an unauthorized burden on home occupations inconsistent with § 4406(3), and therefore is invalid. See *Knollwood Bldg. Condominiums v. Town of Rutland*, 166 Vt. 529, 543, 699 A.2d 31, 41 (1997) (municipality possesses only those powers granted to it by Legislature). The court here properly focused on the statutory requirement that the home occupation be "customary in residential areas" and "not change the character thereof." 24 V.S.A. § 4406(3). In this regard, the evidence fully supported the court's finding that nothing about the use of the rear deck for children's play and storage "caused a variation from the residential character" of the home or neighborhood. See *Housing Vermont*, 165 Vt. at 431, 685 A.2d at 1088 (findings not clearly erroneous must be upheld on appeal). The law and evidence also supported the court's finding that day care facilities for up to ten children were "customary" home occupations in residential areas. See, e.g., *City of Richmond Heights v. Richmond Heights Presbyte-* *rian Church*, 764 S.W.2d 647, 648 (Mo. 1989) (day care center in area zoned for single family residences was valid accessory use under zoning ordinance); *People v. Bacon*, 508 N.Y.S.2d 138, 141 (Dist. Ct. 1986) (family day care was customary home occupation in residential area); *City of Grand Prairie v. Finch*, 294 S.W.2d 851, 854 (Tex. Civ. App. 1956) (child care business qualified as customary home occupation under zoning ordinance).

Finally, the City asserts that the court lacked the power to conditionally grant the permit application, contingent upon Herrick's obtaining an agreement to use part of a nearby church lot for parking and unloading in conformity with general City parking standards. The City offers virtually no authority or persuasive rationale in support of this assertion. Accordingly, we find no error.

### III.

Lastly, the City contends the court erred in granting Herrick's appeal from the notice of zoning violation. Inasmuch as the notice of violation was premised upon Herrick's failure to obtain a CUP, and the court correctly ruled that a CUP was not legally required for Herrick's home occupation, the decision to grant the appeal from the notice of violation was obviously sound.

*Affirmed.*