## STATE OF VERMONT

## ENVIRONMENTAL COURT

|  | } |  |
|---|---|---|
| In re: Eastview at Middlebury, Inc. | } | |
| (Appeal of Act 250 Permit #9A0314) | } | Docket No. 256-11-06 Vtec |
|  | } | |

### Decision on Request to Alter

Appellant Miriam Roemischer requests that this Court alter its February 15, 2008 Decision on her appeal of the October 6, 2006, District #9 Environmental Commission ("District Commission") issuance of Act 250 Permit #9A0314 for the Eastview at Middlebury, Inc. ("Eastview") multi-level residential retirement community project adjacent to the Porter Hospital on South Street in Middlebury (hereinafter referred to as the "Eastview Project"). Appellant expresses four distinct concerns about the 2008 Merits Decision. We take each of them in turn. In this regard, we agree that the concerns Appellant expresses merit reconsideration.

### A. Was the estimate of impacted agricultural soils accurate?

In considering whether the Eastview project, as currently proposed, conforms with Act 250 Criterion 9(B) (i.e., 10 V.S.A. § 6086(a)(9(B)[1]), the district commission in the first instance, and this Court on appeal, must make an initial determination of whether the project will "significantly reduce the agricultural potential of the primary agricultural soils" located on the project site. Id. An initial function of making this determination is arriving at estimates of (a) the total size of the project; (b) the portion of the project site that contains primary agricultural soils; and (c) the portion of the estimated primary agricultural soils on the project site that will be consumed by the proposed project.

Such estimates of land mass and the portions which contain primary agricultural soils is not an exact science. Estimates on the size of Vermont land parcels often contain symbols such as "±" and phrases such as "approximately" and "about." This Court's skills at calculating the

---

[1] Appellant also contends that the Court incorrectly applied the applicable version of § 6086(a)(9)(B), which was amended while the Eastview Act 250 application was pending. That challenge is addressed below. Both the pre- and post-2007 amendments to § 6086(a)(9)(B) require the district commission in the first instance, and this Court on appeal, to estimate whether a proposed project will "significantly reduce the agricultural potential of the primary agricultural soils . . .." Id.

exact size of land parcels is equally subject to approximations. However, Appellant seems to be confused about the findings rendered by the Court.

The Court specifically determined that the Eastview project site, as currently proposed, "contains 40 acres, 30 acres of which Eastview proposes to develop for its project." Finding ¶ 51, Merits Decision at p. 19. The undisputed evidence, and the Court so found, was that a significant portion of the 30± acres that Eastview proposed to develop contained primary agricultural soils.

But the undisputed evidence at trial also showed, and the Court so found, that portions of the 30± acres proposed for development also contained other features, such a wetlands, a large hedgerow and outcroppings of trees and rocks. The Court estimated that these areas should not be included in the category of primary agricultural soils. The Court therefore attempted to estimate that portion of the primary agricultural soils on the Eastview site that the Eastview project would specifically remove from potential agricultural use. The Court reached the estimate of 20± acres.[2]

Some evidence and testimony admitted at trial, including the Mitigation Agreement (Exhibit 40) entered into between Eastview, the Vermont Agency of Agriculture, Food & Markets and the Vermont Housing & Conservation Board, estimated that the Eastview site contained 30 acres of primary agricultural soils.[3] The Court considered such testimony to be just that: estimates. In viewing all the evidence—a substantial portion of which was not contradicted—the Court became concerned as to how portions of this land, including wetlands and the large tree and rock outcroppings, could be considered primary agricultural soils. It appeared that the parties to the Mitigation Agreement felt it unimportant to their discussions to consider whether wetlands or rock outcroppings could be put to agricultural uses. The Court believed it inappropriate to ignore these site characteristics. Thus, the Court arrived at an estimate of 20± acres, which should be read as an estimate of the amount of primary agricultural soils on the project site that the Eastview project would remove from potential agricultural productivity.

---

[2] The Court specifically concluded that of the total 40± acres within the proposed Eastview site, "as much as 30 acres of the Eastview site contains primary agricultural soils and that the Eastview Project will permanently convert 20 acres of those agricultural soils to residential and institutional uses." Merits Decision at p. 21.

[3] Exhibit 40 at Bates Stamp page 500.

Thankfully, this initial component of Criterion 9(B) does not require a more exact calculation in determining the amount of primary agricultural soils that a proposed project will impact; it merely directs a determination as to whether the proposed project will result in a "significant" reduction of the agricultural use potential of primary agricultural soils. Precedent from the former Environmental Board, which we are directed to afford the same weight as precedent from this Court,[4] does not mandate an exact calculation of the specific acreage, but rather whether a "significant" portion of primary agricultural soils on the site will be impacted. The former Environmental Board regarded more than half to be "significant." See Re: Reynolds and Cadreact, Docket No. 4C1117-EB, Findings of Fact, Conclusions of Law and Order at 7 (Vt. Envtl. Bd. May 27, 2004).[5]

The undisputed evidence was, and the Court so found, such a significant impact to be a direct consequence of the Eastview project. For these reasons, we do not see the need to disturb our findings or legal conclusions that estimate (a) the total size of the project site (40± acres); (b) the portion of the project site that contains primary agricultural soils (as much as 30± acres); and (c) the portion of the estimated total of primary agricultural soils on the project site that will be consumed by the proposed project (20± acres).

**B.** **Did the Court apply the correct version of 10 V.S.A. § 6086(a)(9)(B)?**

Applicant Roemischer correctly notes that Eastview submitted its Act 250 permit application to the District #9 Environmental Commission on November 14, 2005 and that the version of 10 V.S.A. § 6086(a)(9)(B) then in effect was different than that referenced in the Merits Decision at pp. 21-22. We therefore must determine whether we applied the correct version of the statute and, if not, whether that is grounds to alter our Merits Decision.

---

[4] See 10 V.S.A. §8405(m).

[5] In reviewing the former Environmental Board decisions cited by Appellant in her Proposed Findings of Fact and Conclusions of Law at p. 38 (Sept. 6, 2007), we did not find the 1/3rd definition for "significant" that Appellant suggested. See Re: Times and Seasons, LLC, et. al., Docket No. 3W0839-2-EB, Findings of Fact, Conclusions of Law and Order at 52, (Vt. Envtl. Bd. May 27, 2004) (finding that development on "two-thirds of the primary agricultural soils on the site constitutes a significant reduction in the agricultural potential of such soils.") (reversed on other grounds, In re: Times & Seasons, LLC, 2008 VT 7); and Re: Southwest Vermont Health Care Corporation, Docket No. 8B0537-EB, Findings of Fact, Conclusions of Law and Order at 38, (Vt. Envtl. Bd. Feb. 22, 2001) ("loss of one-third of the primary agricultural soils on a site constitutes a reduction in the agricultural potential of such soils.")

The first portions of both versions of 10 V.S.A. § 6086(a)(9)(B)[6] are initially similar, in that they ask the district commission in the first instance, and this Court on appeal, whether the proposed project will significantly reduce the agricultural potential of the primary agricultural soils on the project site. If this question is answered in the negative, and the project otherwise conforms with "all other applicable [Act 250] criteria," both statutes direct that an Act 250 permit "will be granted . . .." Id. If, however, the determination is made that the project will impact primary agricultural soils on the project site, then an Act 250 permit may not issue, unless several subsections are satisfied. Compare subsections (i)–(iv) of the 2005 and 2007 Statutes. These two statutory versions of the second alternative for Criterion 9(B) compliance are substantially similar, except for language in subsection (i) of the 2005 Statute that is not found in the 2007 Statute. Specifically, for projects that will impact primary agricultural soils, § 6086(a)(9)(B)(i) (2005) limits Act 250 approval under Criterion 9(B) to those projects where doing so is the "only" means by which "the applicant can realize a reasonable return on the fair market value of his land . . .." Id.

First, the Court wishes to note for the parties, and offer our regrets, that we relied upon the 2007 Statute in our Merits Decision. We were not aware of the distinction and referred to the 2007 Statute without an understanding of this distinction. We therefore turn to an analysis of whether the application of the 2007 Statute to this application was improper or warrants alteration of our Merits Decision.

In comparing the subsections of both statutes, we note that subsections (ii) and (iii) are identical, except for an initial phrase in the 2007 Statute that we determined was not applicable to our analysis. See Merits Decision at 22 (finding that recent amendments to the Middlebury Town Plan that possibly would include the Eastview site in a designated growth center does not impact our analysis). In a similar vein, subsection (i) of the 2007 Statute repeats the requirement contained in subsection (iv) of the 2005 Statute that there be a determination that the proposed project "will not significantly interfere with or jeopardize the continuation of agricultural or forestry on adjoining lands . . .." We specifically rendered positive findings on all these sub-sections. Merits Decision at 22.

---

[6] We follow both parties' lead in hereinafter referring to the two versions of 10 V.S.A. § 6086(a)(9)(B) as the "2005 Statute" and the "2007 Statute."

Thus, the only provision remaining from either statute is subsection (i) from the 2005 Statute. This provision states that a project may still obtain Act 250 approval, even if it significantly impacts agricultural soils, if it is shown that "the applicant can realize a reasonable return on the fair market value of his land only by devoting the primary agricultural soils to uses which will significantly reduce their agricultural potential . . .." Id.

We note that the Merits Decision includes a discussion of the characteristics of this site that, due to its proximity to the Porter Hospital facilities and the village center, make it the most ideal site for the Eastview facility. Id. at 22. We also concluded that because the co-applicants, including the current fee title holder of the site, Middlebury College, own no lands, other than those that contain significant agricultural soils. We concluded that this project, if sited on any other available lands, would still have an impact on primary agricultural soils. Id. at 22. We therefore turned to other evidence offered by Eastview to determine whether its project could conform to Criterion 9(B).

In this regard, we specifically reject Appellant's current argument that agricultural mitigation agreements were not an accepted basis for conformance with 10 V.S.A. § 6086(a)(9(B)(i) (2005). Agricultural mitigation agreements have long been relied upon for conformance with Criterion 9(B). See Re: Southwest Vermont Health Care Corporation, supra, at 38–40 (citing Re: J. Philip Gerbode, Docket No. 6F0357R-EB, Findings of Fact, Conclusions of Law and Order at 9 (Vt. Envtl. Bd. March 26, 1991)) (finding conformance with §6086(a)(9(B)(i), even where a significant impact on agricultural soils would occur, because such impact would be adequately offset by an agricultural mitigation agreement offered by the applicant). Our Supreme Court has also acknowledged that the mitigation program, administered by the Vermont Department of Agriculture, can be a legal and legitimate means by which projects that will impact agricultural soils may gain Act 250 approval under Criterion 9(B). See In re: Nehemiah Associates, Inc., 168 Vt. 288, 290-91 (1998). Thus, agricultural mitigation agreements have long been acknowledged as a proper vehicle for Criterion 9(B) conformance, even though the 2005 Statute made no reference to such agreements. The Legislature addressed this in its 2007 amendments to § 6086(a)(9)(B), including a specific reference in subsection (iv) to agricultural mitigation agreements and the deletion of subsection (i) from the 2005 Statute, as it did not contain specific authorization for the use of mitigation agreements. In this regard, we see no substantive difference between the application of Criterion 9(B) before and after the 2007

5

amendments, particularly in light of the well reasoned precedent from the former Environmental Board.

Eastview also claims that the 2007 Statute should be followed in this appeal, both because it is remedial in nature and because, as the applicant, it alone has the right to claim the benefit of a favorable change in law while its application is pending. These arguments have merit, yet we decline to address them in detail in light of the foundation detailed above for our determination that our Findings and Conclusions as to Criterion 9(B) need not be changed.

## C.     Did the Court find that the additional 10 acres will be used for agriculture?

Appellant next claims that there was no evidence to support a finding that the ten acres within the Eastview site that is not proposed for development "will be used for agriculture." Appellant is partially correct; there is no support for such a finding in the record. But she is mistaken that the Court made such a finding. The specific conclusion Appellant attacks made no such prediction; rather, we concluded that the ten acres of the project site reserved from development "are capable of contributing to an economic or commercial agricultural operation, particularly if joined with the other agricultural lands located nearby." Merits Decision at 22.

Both the 2005 and 2007 versions of Criterion 9(B) requires the Court to determine whether the "development has been planned to minimize the reduction of agricultural potential of the primary agricultural soils . . .." 10 V.S.A. § 6086(a)(9)(B)(iii). We concluded that Eastview had satisfied this subsection by including ten acres in the project site on which development has not been proposed. Id. at ¶57, p. 20. We also concluded that Eastview had reduced the impact on the potential use of agricultural soils by reducing "the total number of units from 116 to 101 and further cluster[ing] the to-be-developed area, so as to reduce the amount of agricultural soils impacted." Id.

Little dispute was offered at trial over the importance of the primary agricultural soils on and adjacent to the Eastview site. But it was also generally undisputed that, even prior to Eastview's proposal, these lands have only been used for viable agricultural purposes on an intermittent basis and, when used, were leased at rates well below the market for primary agricultural lands. Id. at ¶52, p. 20. Thus, an unconditional prediction that this ten acres "will be" used for agricultural purposes is not supported by the record, was not made by this Court and is not a required finding under Criterion 9(B).

6

Appellant also argues that our findings are deficient because "there is a possibility that [Eastview] would expand in the future" onto the ten acres not now slated for development. Appellant's motion to alter at 6. We decline to consider this argument, as it contemplates a possible future development proposal that is not the subject of our jurisdictional authority in this appeal. To consider it would require the rendering of an impermissible advisory opinion. In re: Appeal of 232511 Investments, Ltd. d/b/a Stowe Highlands, 2006 VT 27 at ¶19. We decline to do so.

**D.      Did the Court rely on undisclosed site visit observations?**

Lastly, Appellant asserts that the Court relied upon its own observations during the site visit that preceded the first day of trial, and that the Court failed to disclose these site visit observations. Appellant is mistaken. The Court merely gave notice in its Merits Decision that some of the factual representations presented at trial were better understood by the Court, in light of the site visit the Court conducted with the parties. Id. at 5 and 20, n. 14. The Court specifically noted that some of the trial evidence was "put into context by the site visit the Court conducted with the parties prior to trial." Id. There were no site visit observations, absent from the evidence admitted at trial, upon which the Court relied in rendering its findings.

Site visits fulfill an important function of giving the parties' representations a context within which the Court may better understand the evidence offered at trial, particularly for a trial judge who is not familiar with the project site and the neighborhood that surrounds it. This concept does not employ new evidence not offered by or disclosed to the parties; it helps the Court put into context the verbal representations and two-dimensional site plans offered at trial. Some examples from the Eastview trial include the hedgerow and outcropping of trees and rocks on the project site. All parties fully understood the verbal and two-dimensional site plan references to these objects. The Court did not, at least until it conducted the site visit on the first day of trial.

The Court always attempts to make clear, both at site visits and the beginning of trials, that while site visits have always served an important function, they do not constitute evidence upon which this Court can base its findings; any site visit observations or representations a party intends to rely upon must be repeated and referenced at trial. Through long experience with district commission proceedings, this jurist has concluded that it is improper in rendering findings to rely upon site visit observations, unless such evidence is specifically introduced by a

party at trial. Rather, a site visit serves an important function of giving context to the parties' representations for the fact-finder.

Site visits are recognized as an important tool at our disposal. See V.R.E.C.P. 2(d)(2)(ix); In re: Vermont RSA Limited Partnership d/b/a Verison Wireless, 2007 VT 23 ¶3 (referencing observations made during Board site visit); and In re Herrick, 170 Vt. 549, 551 (1999) (mem.) (passing reference in trial court decision to site visit, with adequate facts in the record to support findings, does not constitute error). We see no error in the contextual reference to our site visit in this appeal. We have no ability to make disclosure of facts observed during the site visit that were not presented into evidence at trial, because we know of none. In response to Appellant's request here, we can only respond by saying that we received testimonial representations and exhibits at trial that the site visit helped the Court to better understand. We simply cannot recall any facts that weren't disclosed at trial, observed during the site visit, and upon which the Court based its findings.

## Conclusion

The Court has reconsidered its findings and legal conclusions that Appellant challenges in her motion to alter. However, for all the reasons more fully expressed above, the Court concludes that it is not necessary to alter its Merits Decision. Therefore, the Decision on the Merits and Judgment Order of February 15, 2008 remain final.

Done at Berlin, Vermont this 27th day of March, 2008.

_____
Thomas S. Durkin, Environmental Judge