STATE OF VERMONT

| | |
|---|---|
| Shatney Home Occupation Denial | Docket No. 43-4-16 Vtec |

**DECISION ON THE MERITS**

Appellants Wilma and Earl Shatney appeal an April 1, 2016 decision by the Hardwick Development Review Board upholding the Zoning Administrator's denial of their application for a home occupation permit.  A *de novo* trial was held at the Superior Court, Civil Division, in St. Johnsbury on March 16, 2017.  After the trial was completed, the Court visited the Shatney residence in Hardwick.  The site visit was conducted to provide context for the evidence presented at trial, and no new evidence was admitted.  The parties filed proposed findings of fact and conclusions of law after the trial was concluded.

Appellants are represented by Glenn Howland, Esq., and the Town of Hardwick is represented by Sarah Davies-Coe, Esq.

Based upon the evidence presented, the Court renders the following Findings of Fact, Conclusions of Law, and the Judgment Order that accompanies this Merits Decision.

**Findings of Fact**

1. Earl and Wilma Shatney (the Shatneys) live at 41 School Street, East Hardwick, Vermont.

2. The Shatneys own an independent trucking business, RLBL Trucking, LLC.

3. In the past, the Shatneys kept up to two large tractor trailer trucks in their driveway.  The Shatneys' neighbors have complained about the noise, exhaust fumes, and vibrations caused by these trucks. The Town of Hardwick (the Town) initiated zoning enforcement actions alleging that the use of the trucks violated performance standards set out in the Bylaws.  One of those enforcement matters came before this Court, and we ruled in favor of the Town.  Shatney NOV (Overturned), No. 171-12-13 Vtec (Vt. Super. Ct. Envtl. Div. Feb. 4, 2015) (Durkin, J.).

4.      The Shatneys' trucking activity has decreased.  The Shatneys now have only one Ford 9000 truck (the truck) which Earl Shatney uses for his business transporting logs and hay.  The Shatneys keep the truck parked in the driveway at their home, sometimes when it is loaded with logs.

5.      The truck has a Cummins 8.3-liter diesel engine.  This engine is smaller than some diesel engines—including those in tractor trailer trucks—but larger than engines found in pickup trucks.  It is similar to home heating oil trucks which deliver to homes in the neighborhood.  When the engine is running it creates exhaust fumes, noise, and vibrations.

6.      The frequency of Mr. Shatney's use of the truck fluctuates.  He used the truck to transport logs only a few times in the seven weeks prior to trial.

7.      When using the truck, Mr. Shatney often leaves his home at 7:00 a.m. and returns at 4:00 p.m.  When the roads are posted,[1] however, he will leave home as early as 4:00 a.m.

8.      In cold weather the truck needs to be started and left running to warm it up before driving.  Mr. Shatney idles the truck in his driveway for at least 20–30 minutes, and for up to 45 minutes, before driving it away in the morning.

9.      The Shatneys' son, Jeffrey Shatney, is a member of RLBL Trucking, LLC, but he does not live at 41 School Street and does not engage in any trucking activity at the property.

10.     The zoning regulations for the Town of Hardwick are set out in the Hardwick Unified Development Bylaws (the Bylaws).  The Bylaws that were controlling when the Shatneys submitted their home occupation application went into effect in 2005.[2]

11.     The Shatneys' home is in the compact residential district.  From the street in front of the Shatneys' home, one can look to the south and see a logging business, with a pile of logs and logging trucks, which is situated in the central business district.  Trucks are often parked at two nearby garages, one at the far end of School St. to the east of the Shatneys' residence, the other on Route 16, which runs parallel to and south of School Street.  Neither garage is visible from the Shatneys' home, and both are situated in the highway mixed use district.

---

[1] Although not explained by the witnesses or evidence, we assume that references to roads being "posted" relates to the common practice of towns posting notices prohibiting heavy trucks from driving on certain roads when those roads are in the process of thawing and drying out at the end of winter, because the roads are commonly wet and muddy at that time and can easily be damaged by heavy vehicles.

[2] Counsel for the Town indicated at the start of trial that the Bylaws had since been amended, although no evidence on the amended bylaws was presented to the Court.

12. Large trucks drive on School Street on a regular basis.

13. The Town's Zoning Administrator has not visited the Shatneys' property to observe this truck.

14. David Gross lives next door to the Shatneys. The Shatneys' truck is parked close to Mr. Gross's property line. Joyce Mandeville lives across the street and one house over from the Shatneys. At trial, Mr. Gross was unable to recall whether he has ever smelled exhaust from the truck inside his home, or whether he has kept his windows closed for the entire time that the Shatneys have been using the truck.[3] Ms. Mandeville also keeps the windows facing the Shatneys' house closed. Mr. Gross credibly testified that the noise created by the truck is similar to that made by trucks passing by on the street, but not louder; Ms. Mandeville succinctly testified that she can hear the truck. The vibrations from the truck are somewhat discernible in Mr. Gross's house, but not discernible or less noticeable on the far side of the house, and are similar to the vibrations of trucks driving by the house. Ms. Mandeville noted that the vibrations are also noticeable at her house.

15. The Shatneys submitted a home occupation application related to the use of the truck at their home on January 5, 2016. The application was denied by the Hardwick Zoning Administrator, and that denial was affirmed by the Hardwick Development Review Board (DRB).

16. The 2005 Bylaws state that no zoning permit is required for a home occupation.

**Procedural Background**

Appellants originally included four questions in their Statement of Questions. Both parties moved for summary judgment before trial, and in a decision dated October 26, 2016 we granted the Town's motion for summary judgment on Questions 1 to 3. Shatney Home Occupation Denial, No. 43-4-16 Vtec (Vt. Super. Ct. Envtl. Div. Oct. 27, 2016) (Walsh, J.).

---

[3] Mr. Gross testified that in the past, when the Shatney's had two larger trucks, exhaust fumes from the trucks would enter his home, requiring him to keep his windows closed.

Appellants' Question 4 asks "[w]hether, pursuant to the existing and proposed bylaws in effect on January 5th, 2016, 24 V.S.A. [§] 4449(d)[4] and the vested rights doctrine, the Appellant's application [for a home occupation permit] should be granted."

In our summary judgment decision we granted judgement in favor of the Town on the part of Question 4 which asks whether the permit application should have been approved under the proposed bylaw amendments. Shatney, No. 43-4-16 Vtec, slip op. at 7 (Oct. 27, 2016). We reserved for trial the part of Question 4 which asks whether the permit application should have been approved under the existing bylaws. Id.

At the outset of trial, counsel for the Shatneys indicated that they understood the Bylaws do not require a permit for a home occupation, and explained that what they sought from the Court was a determination regarding whether their trucking activity is permissible as a home occupation, and whether the activity otherwise complies with the Bylaws.

**Conclusions of Law**

I.      **Whether the Shatneys' Trucking Activity Qualifies as a Home Occupation**

The Town argues that the Shatneys' trucking activity does not qualify as a home occupation because it occurs in their driveway and not within the confines of the home. The Shatneys disagree, asserting that the term "single family dwelling" should be interpreted to include the driveway. As such, they contend, their trucking activity takes place within a portion of the dwelling and therefore qualifies as a home occupation.

Title 24, § 4412, requires municipal zoning regulations to allow home occupations as follows:

> Protection of home occupations. No bylaw may infringe upon the right of any resident to use a minor portion of a dwelling unit for an occupation that is customary in residential areas and that does not have an undue adverse effect upon the character of the residential area in which the dwelling is located.

24 V.S.A. § 4412(4).

Section 4.8(A) of the Bylaws mirrors this language, stating in part:

---

[4] Section 4449(d) sets out the process for reviewing a zoning application filed while proposed zoning bylaw amendments are pending. We held in our October 26, 2016 decision that the application here did not have to be reviewed under any proposed amendments, and so this section is not relevant to our analysis.

4

Home Occupation. In accordance with [24 V.S.A. § 4412(4)], no provision of these regulations may infringe upon the right of any resident to use a minor portion of a dwelling for an occupation which is customary in residential areas and which does not have an undue adverse effect upon the character of the surrounding neighborhood or area. No zoning permit is required for a home occupation.

Section 8.2 of the Bylaws further defines "Home Occupation" as:

A use conducted entirely within a minor portion of a single family dwelling which is conducted by resident family members, which is clearly incidental and secondary to the use of the dwelling for dwelling purposes, which does not have an undue adverse effect upon the residential character of the neighborhood, and which meets the requirements of these regulations (see Section 4.8).

Our foremost aim in reading statutes and zoning ordinances is to give effect to the intent of the drafters. In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262. In doing so, we first look to the plain language of the statute or ordinance. Id.

The statute here allows a person to "use a minor portion of a dwelling unit" for a home occupation. 24 V.S.A. § 4412(4). In its plain meaning, a "dwelling unit" is a structure in which people live; a driveway would not qualify as such a structure. The Bylaws are even more specific in stating that a home occupation must occur "entirely within a minor portion of a single family dwelling." Bylaws Section 8.2. The Bylaws further define "dwelling unit" as "a space consisting of one or more rooms designed, occupied or intended for occupancy as a separate living quarters, with cooking, sleeping, and sanitary facilities provided within that space for the exclusive use of a single family or individual maintaining a household." Id. Again, a driveway is clearly not within this definition.

Under the plain language of the state statute and Town Bylaws, therefore, the Shatneys' trucking activities, which take place in their driveway, do not qualify as a home occupation. The pertinent case law supports this conclusion.

In In re Herrick, our Supreme Court was presented with the question of whether a home day care, at which children were in a house but also spent part of the day on the home's deck or porch, satisfied the part of the home occupation statue allowing "use [of] a minor portion of a dwelling unit." 170 Vt. 549, 550 (1999) (mem.) (interpreting statutory language identical to the current 24 V.S.A. § 4412(4), then codified at 24 V.S.A. § 4406(3)). Those challenging the day care argued in part that it did not qualify as a home occupation because the activity did not take place

exclusively indoors. Id. The Supreme Court held that "a home occupation plainly must occur in the owner's residence." Herrick, 170 Vt. at 550. At the same time, the Court held that this did not mean a home occupation be entirely confined "to the interior of an enclosed structure." Id. at 551. The Court observed that the home occupation statute "does not specifically define 'dwelling' or expressly restrict all occupational activity to the inside of a dwelling." Id. The Court concluded that the day care satisfied the home occupation statute, noting that the children were not playing "in an open yard or driveway unconnected to the residence, but rather on a rear porch or deck that was reasonably construed to be a part of the dwelling." Id. This last sentence strongly suggests that the Court believed activity in a residence's driveway would not comply with the home occupation statute.

After Herrick was decided, we were presented with the question of whether the storage of repossessed vehicles in a fenced-in area on the property of a single-family home qualified as a home occupation. In re Appeal of David and Candy Hough, No. 100-7-01 Vtec, slip op. at 1–2 (Vt. Envtl. Ct. Dec. 28, 2001) (Wright, J.). We found that "the outdoor vehicle storage area is not 'within the dwelling' as required by the definition of home occupation in the Zoning Regulations, nor is it attached to the dwelling such as the porch or deck in the Herrick case." Id. at 3. We further noted that the storage was not in an accessory building, and, for all these reasons, concluded that the use did not fall within the zoning regulations' definition of home occupations, or "within the protection for home occupations in the state statute." Id.

In another case, we addressed the question of whether parking a tractor and trailer in a home's driveway would qualify as a home occupation. Appeal of Trotin, No. 141-8-04 Vtec, slip op. at 6 (Vt. Envtl. Ct. Jun. 30, 2005) (Durkin, J.). Citing Herrick, we held as a matter of law that "parking of Appellees' tractor(s) or trailer(s) in Appellees' yard or driveway, or permitting either to have their engines idling in the yard or driveway for an extended period of time" would not qualify as a home occupation either under the relevant zoning bylaws, or under the home occupation statute. Id.

In still another case, we held that the use of a tractor trailer parked outside a home to store materials for a costume rental business did not comply with the relevant bylaw, which

required that "a home occupation be operated wholly within [an] accessory building" or the home. Appeal of Adams, No. 145-9-03, slip op. at 12 (Vt. Envtl. Ct. Mar. 21, 2005) (Wright, J.).

Based on the plain language of the home occupation statute, the Bylaws, and the associated case law, we conclude that the Shatneys' trucking activity is not a home occupation.

## II.    Whether the Shatneys' Trucking Activities Conform with the Performance Standards

Apart from determining whether the Shatneys' trucking activity qualifies as a home occupation, the Shatneys also seek a determination as to whether the activity generally complies with the Bylaws.  This question appears to revolve around compliance with performance standards.

The matter before us is not strictly an enforcement action.  At the same time, the Town in its post-trial brief asks us to conclude that idling the truck in the driveway violates subsections (1), (7), and (8) of the Bylaws performance standards, while the Shatneys, in their post-trial brief, ask us to hold that their trucking activity does not violate these standards.

The relevant standards are set out in Bylaws Section 3.11, which reads in part as follows:

(A)    In accordance with [24 V.S.A. § 4414(5)][5], the following performance standards must be met and maintained for all uses in all districts, except for agriculture and forestry, as measured at the property line.  In determining ongoing compliance, the burden of proof shall fall on the applicant, property owner, and/or all successors and assigns; in the case of appeals to the Zoning Administrator alleging a violation of one or more of the following standards, the burden of proof shall rest with the appellant. No use, under normal conditions, shall cause, create or result in:

(1)  regularly occurring noise in excess of 65 decibels, or 70 decibels within the Industrial District, or which otherwise represents a significant increase in noise levels in the vicinity of the use so as to be incompatible with the surrounding area;

. . .

---

[5]  This statute reads, in pertinent part:

bylaws may specify acceptable standards or levels of performance that will be required in connection with any use. These bylaws shall specifically describe the levels of operation that are acceptable and not likely to affect adversely the use of the surrounding area by the emission of such dangerous or objectionable elements as noise, vibration, smoke, dust, odor, or other form of air pollution, heat, cold, dampness, electromagnetic, or other disturbance . . . .

24 V.S.A. § 4414(5).

(7) clearly apparent vibration which, when transmitted through the ground, is discernable at property lines without the aid of instruments; or

(8) smoke, dust, noxious gases, or other forms of air pollution which constitute a nuisance or threat to neighboring landowners, businesses or residents; which endanger or adversely affect public health, safety or welfare; which cause damage to property or vegetation; or which are offensive and uncharacteristic of the affected area.

The evidence admitted at trial is not sufficient for us to conclusively determine whether the trucking activity complies with the performance standards related to noise and exhaust.[6] For example, it is unclear whether truck exhaust enters the neighbors' homes because they keep their windows closed. It is also unclear whether the exhaust is offensive or uncharacteristic in the area, given the trucks that drive down the street. While two neighbors can hear noise caused by the truck, it is not clear that the noise "represents a significant increase in noise levels in the vicinity of the use so as to be incompatible with the surrounding area," particularly since the noise is similar to that made by passing trucks. We conclude that if the Shatneys allow their truck to idle to warm-up the engine, then the noise would likely "represent[] a significant increase in noise levels in the vicinity of the use so as to be incompatible with the surrounding area."

Additionally, both neighbors testified that they can feel vibrations from their homes caused by the truck idling. Violations which continue for extended periods of time when the truck engine is warming-up may not comply with the performance standard that prohibits any vibration that is clearly discernible at the property line.[7]

### Conclusion

Because the Bylaws do not require a zoning permit for a home occupation, and because the Shatneys' trucking activities at their home do not qualify as a home occupation, we answer

---

[6] Notably, Bylaws Section 3.11(A) states that "in the case of appeals to the Zoning Administrator alleging a violation of one or more of the following standards, the burden of proof shall rest with the appellant." This appears to impermissibly shift the burden of proof from the Town to the alleged violator. While an applicant for a zoning permit carries the burden of proving compliance with zoning ordinances for the permit application to be granted, In re Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 18, 195 Vt. 586, the municipality carries the burden of proving a permit or zoning ordinance violation, In re Jewell, 169 Vt. 604, 604 (1999) (mem.); Churchview Estates LLC NOV, No. 9-1-15 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Feb. 1, 2016) (Walsh, J.).

[7] Because the matter on appeal is not an enforcement action, and because of the very general nature of the testimony, we decline to conclusively hold that the Shatneys do or do not comply with the performance standard related to vibration.

the Shatneys' Question 4 in the negative, and conclude that the Shatneys' home occupation application must be **DENIED**. As to the question of whether the trucking activity in general complies with the Bylaws, we are unable to determine based on the evidence before the Court whether the Shatneys' activity complies with the Bylaws' performance standards. [8]

This completes the matter before the Court. A Judgment Order is issued contemporaneously with this decision.

Electronically signed on April 18, 2017 at 10:53 AM pursuant to V.R.E.F. 7(d).

_____

Thomas G. Walsh, Judge
Superior Court, Environmental Division

---

[8] We note this Court's March 4, 2015 decision upholding the Town's Notice of Violation of the Town's performance standards related to more intense trucking activity. See Shatney NOV (Overturned), No. 171-12-13 Vtec (Vt. Super. Ct. Envtl. Div. Feb. 4, 2015) (Durkin, J.).